```
                UNITED STATES DISTRICT COURT
                         FOR THE
                WESTERN DISTRICT OF NEW YORK
```

WILLETTA C. HARMON,           )
                              )
        Plaintiff,            )
                              )
        v.                    )     Case No.: 1:18-cv-80
                              )
ANDRE R. DUNLAP,              )
                              )
        Defendant.            )

## OPINION AND ORDER

Plaintiff Willetta Harmon brings this civil rights action against New York State Police Investigator Andre Dunlap pursuant to 42 U.S.C. § 1983. Harmon claims that Dunlap violated her Fourth Amendment rights first by ordering her to change her clothes in front of him, and then by conducting a pat-down search after she had changed. Now before the Court is Dunlap's motion to dismiss the Complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss is **granted** and Harmon may file an Amended Complaint within 30 days.

## Factual Background

On the morning of January 29, 2015, Harmon and her four children were at home preparing breakfast. ECF No. 1, at ¶ 12. At approximately 9:15 a.m., Dunlap and another New York State Police Officer arrived at Harmon's residence and knocked on her door. *Id.* at ¶¶ 12-13. When Harmon opened the door, one of the officers presented his badge and asked her if she would answer a few

questions. *Id.* at ¶ 13. Harmon allowed the officers to enter her home. *Id.*

Dunlap informed Harmon that he had been surveilling her and accused her of running a brothel out of the home. *Id.* at ¶ 15. He also accused her of using and selling drugs. *Id.* at ¶ 14. Dunlap further questioned Harmon about her relationship with Keila Williams—an acquaintance of Harmon's who had previously lived with her. *Id.* at ¶ 16. Following this line of questioning, Dunlap asked Harmon if someone could watch her children because the officers had a warrant for her arrest. *Id.* Harmon responded that she did not know anyone who could watch her kids. *Id.* at ¶ 18. Dunlap informed Harmon that she would be gone for a few hours and ordered her to change her clothes. *Id.* at ¶ 19. Harmon was wearing a nightgown at the time. *Id.*

Dunlap then followed Harmon to her bedroom upstairs while the other officer remained by the front door. *Id.* Once he and Harmon were both in the bedroom, Dunlap shut the door behind him. *Id.* at ¶ 20. Harmon asked Dunlap to turn around while she changed clothes, but he refused. *Id.* Dunlap then watched as Harmon got completely naked and put on new clothes. *Id.* They both then proceeded downstairs and the officers placed Harmon in handcuffs. *Id.* at ¶ 21.

After Harmon continued to raise concerns about her children, Dunlap asked a neighbor to watch Harmon's kids. *Id.* at ¶¶ 22-23.

2

Harmon's neighbor Ms. June refused. *Id.* at ¶ 23. Dunlap then conducted a pat-down search of Harmon while Ms. June witnessed the search. *Id.* at ¶ 24. Harmon alleges that she felt violated by the search, as Dunlap "gave extra attention to her breasts, buttocks, and the area between her legs." *Id.* at ¶ 25. She further alleges that she "felt as though she was being groped rather than having a search performed on her." *Id.*

Following this search, the officers took Harmon to Erie County Holding Center. *Id.* at ¶ 27. During the ride there, Dunlap informed Harmon that she was under arrest for Grand Larceny. *Id.* That charge was later dismissed. *Id.* Harmon claims that Dunlap caused her severe emotional distress by forcing her to change in front of him and then conducting an unnecessary search after watching her change. *Id.* at ¶ 28.

## **Standard of Review**

When reviewing a Rule 12(b)(6) motion to dismiss, courts must determine whether the complaint pleads "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be facially plausible, a complaint must contain "well-pleaded facts" that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678-79. A complaint "does not need detailed factual allegations" but

3

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In determining the plausibility of a claim, courts assume that all factual allegations in the complaint are true. *Iqbal*, 556 U.S. at 678. Moreover, courts view the facts in the light most favorable to the plaintiff, drawing all inferences in its favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). However, "pleadings that . . . are no more than conclusions are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## Discussion

### I. Harmon's First Cause of Action

Harmon first alleges that Dunlap violated her constitutional right to bodily privacy by ordering her to change clothes and refusing to divert his gaze. ECF No. 1, at ¶ 32. Harmon argues that Dunlap "manufactured circumstances so that he would be able to see [her] naked body for an extended period of time." *Id.* In her view, Dunlap's actions constituted an unreasonable search that infringed on her Fourth Amendment rights. Dunlap claims that he is shielded by qualified immunity.

Qualified immunity protects government officials from money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2)

that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To qualify as clearly established, a "right's contours [must be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). Accordingly, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (quoting *al-Kidd*, 563 U.S. at 743).

Here, the analysis begins with Dunlap requiring Harmon to change out of her nightgown and into appropriate clothing. Second Circuit precedent imposes a duty on officers to ensure that arrestees are properly clothed before removing them from their residence. *See United States v. Di Stefano*, 555 F.2d 1094, 1101 (2d Cir. 1977)("The officers had a duty to find clothing for [Defendant] to wear or to permit her to do so."); *United States v. Titus*, 445 F.2d 577, 579 (2d Cir. 1971) ("[The agents] were bound to find some clothing for [Defendant]"); *United States v. Rudaj*, 390 F. Supp. 2d 395, 401 (S.D.N.Y. 2005) ("The Second Circuit has long recognized that an arresting officer has a duty to ensure that an arrestee is sufficiently dressed before removing her from her residence."). Dunlap was also compelled to

5

"maintain a watchful eye on" Harmon to ensure that she did not "destroy evidence or procure a weapon." *Rudaj*, 390 F. Supp. 2d at 401 (citing *Di Stefano*, 555 F.2d at 1101); *see also Washington v. Chrisman*, 455 U.S. 1, 6 (1982) ("The officer had a right to remain literally at [the arrestee's] elbow at all times . . . .").

Harmon relies in part upon cases that establish a prisoner's right to bodily privacy, "which includes freedom from 'the involuntary viewing of private parts of the body by guards of the opposite sex.'" ECF No. 10, at 11 (quoting *Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980)). She argues that arrestees have, at a minimum, the same right to privacy as inmates, and concludes that because "there [was] no indication that the officers were in a hurry," they should have requested a female officer report to the scene to accompany Harmon while she changed. *Id.* at 6.

While Harmon's arguments may have merit in terms of both common sense and decency, they do not establish a violation of a clearly established right. In fact, several courts have dismissed claims involving prison guards viewing the naked bodies of prisoners of the opposite sex. *See, e.g. Little v. City of New York*, 13 CV 3813 (JGK), 2014 WL 4783006 (S.D.N.Y. Sept. 25, 2014); *Baker v. Welch*, No. 03 Civ. 2267, 2013 WL 229010521 (S.D.N.Y. Dec. 10, 2013). Some of these cases even involved invasive strip searches. *See, e.g., Holland v. City of New York*,

197 F. Supp. 3d 529 (S.D.N.Y. 2016) (holding that even though strip searches performed by the opposite sex are "subject to higher scrutiny," they are generally constitutional if they consist of an "incidental and brief viewing of a naked prisoner"). Moreover, none of the prisoners' rights cases cited by Harmon would have put Dunlap on notice that his actions were unlawful.

The Supreme Court has repeatedly warned lower courts "not to define clearly established law at a high level of generality." *See, e.g., Mullenix v. Kuna*, 136 S. Ct. 305, 308 (2015). In this case, Harmon relies upon case law that does not address the situation found here: a suspect needing to change into appropriate clothing prior to transport by law enforcement agents. Consequently, the case law does not establish that has "it would be clear to a reasonable officer that [Dunlap's] conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Harmon's first cause of action is therefore dismissed on the basis of qualified immunity.

**II. Harmon's Second Cause of Action**

Harmon's second cause of action challenges the pat-down search Dunlap performed after Harmon had changed her clothes. She asserts that Dunlap knew she did not have a weapon or evidence of a crime on her person because he had "recently observed [her] get naked and then put on clothes." ECF No. 1, at ¶ 48. Thus, she

7

claims Dunlap had "no justification to conduct said search," arguing that it did not fall under the search-incident-to-arrest exception because "[n]either the interest of officer safety or evidence preservation were present." *Id.* at ¶ 41. She contends that the pat-down search violated her Fourth Amendment rights because the lack of justification rendered the search unreasonable. *Id.* at ¶ 40. Like Harmon's first cause of action, qualified immunity shields Dunlap from this claim.

In *United States v. Robinson*, the Supreme Court held that a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." 414 U.S. 218, 235 (1973). The Court explicitly rejected the notion that courts must conduct case-by-case adjudications to determine "whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." *Id.* More recently, the Supreme Court reaffirmed that "searches of a person incident to arrest . . . are reasonable regardless of 'the probability . . . that weapons or evidence would in fact be found.'" *Riley v. California*, 134 S. Ct. 2473, 2485 (2014) (quoting *Robinson*, 414 U.S. at 235).

Harmon does not challenge the lawfulness of her arrest and admits that the officers acted pursuant to a valid arrest

8

warrant. She also does not dispute the reasonableness of a search incident to a lawful arrest. Rather, she argues that the exception allows for only a single search and any subsequent searches require additional justification. In her view, Dunlap had already conducted "a visual strip search" by watching her change.

Harmon's arguments are unavailing. As an initial matter, she has not established that Dunlap watching her change into appropriate clothing constitutes a search for Fourth Amendment purposes. In addition, the cases cited above did not frame the officers' actions as searches. Similarly, Harmon does not cite any authority supporting the proposition that the search-incident-to-arrest exception permits only one search of the arrestee. In fact, she acknowledges that "there is no case which outright states that an officer can only search an individual incident to arrest a single time." ECF 10, at 6. Instead, she relies on a tenuous argument regarding the wording of the cases that have addressed the exception, emphasizing that courts have phrased their decisions in the singular. *See Robinson*, 414 U.S. at 235 ("[A] search incident to the arrest requires no additional justification."); *United States v. Diaz*, 854 F.3d 197, 209 (2d Cir. 2017) ("The authority to conduct a full field search as incident to arrest [is] a bright-line rule."); *but see Riley*, 134 S. Ct. at 2485 ("[S]earches of a

person incident to arrest . . . are reasonable.").

In contrast, Dunlap points to multiple cases where courts have found that the search-incident-to-arrest exception covers more than one search. *United States v. Scott*, No. 09 CR 331(HB), 2009 WL 4975269, at *7 (S.D.N.Y. June 8, 2009) ("[The officer's] second search of [the arrestee's] person at . . . headquarters was a permissible search incident to arrest.") (citing *United States v. Edwards*, 415 U.S. 800 (1974)); *see also Sroka v. Welcher*, 13-cv-00190-RJA-HKS, Dkt. No. 28 (W.D.N.Y. Jan. 20, 2016) (Report and Recommendation finding that the search-incident-to-arrest exception covered three frisks of an arrestee's legs). Consequently, while Dunlap's actions do not appear to have violated Harmon's constitutional rights, clearly established law would not have put him on notice that his actions were unlawful.

Moreover, the facts alleged in the Complaint do not support a plausible claim. The parties agree that Dunlap did not search Harmon's clothes before she put them on. Thus, the "visual strip search" did not dissipate the officer's interest in ensuring his safety. *See, e.g., United States v. McCargo*, 464 F.3d 192, 201 (2d Cir. 2006) ("[P]olice officers should be certain before transporting members of the public . . . that none of them is armed" and "we think the most reasonable, and least intrusive, solution is to permit a pat-down for weapons."). Dunlap was

10

therefore justified in performing a pat-down search of Harmon's person, and qualified immunity bars the second cause of action.

### III. Leave to Amend

Federal Rule of Civil Procedure Rule 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. R. 15(a)(2). Courts may deny leave to amend when amendment would be futile. *Tocker v. Phillip Morris Companies, Inc.*, 470 F.3d 481, 491 (2d Cir. 2006).

Harmon may have a colorable claim that the manner in which Dunlap conducted the pat-down search violated her constitutional rights. Her Complaint states that "Dunlap gave extra attention to her breasts, buttocks, and the area in between her legs," and that she "felt as though she was being groped rather than having a search performed on her." ECF No. 1 at ¶ 25. Dunlap addresses this potential cause of action in his motion to dismiss. In doing so, he concedes that "additional evidence of improper conduct during a search" may make the search unlawful. ECF 9, at 12. The Court will therefore allow Harmon leave to amend her Complaint to develop this cause of action.

### Conclusion

For the reasons set forth above, Dunlap's motion to dismiss (ECF No. 9) is **granted,** and Harmon may file an Amended Complaint within 30 days. Failure to timely file an Amended Complaint will result in the dismissal of all claims with prejudice.

DATED at Burlington, Vermont, this 4th day of March, 2020.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge