UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

WILLETTA C. HARMON,           )
                              )
          Plaintiff,          )
                              )
          v.                  )     Case No. 1:18-cv-80
                              )
ANDRE R. DUNLAP,              )
                              )
          Defendant.          )

### OPINION AND ORDER

Plaintiff Willetta Harmon brings this against New York State
Police Investigator Andre Dunlap pursuant to 42 U.S.C. § 1983,
claiming that Dunlap violated her rights when he conducted a
highly-invasive search of her person while arresting her for
depositing a forged check.  Dunlap now moves to dismiss, arguing
that the allegations in the First Amended Complaint ("FAC") are
inconsistent with those alleged in Harmon's initial pleading.
The original Complaint was dismissed without prejudice and with
leave to amend.  For the reasons set forth below, the motion to
dismiss is denied.

### Factual Background

The following facts are alleged in the FAC.  On the morning
of January 29, 2015, Harmon and her four children were at home
preparing breakfast.  ECF No. 13 at ¶ 12.  At approximately 9:15
a.m., Dunlap and another New York State Police Officer arrived at
Harmon's residence and knocked on the door.  *Id.* at ¶¶ 12-13.
When Harmon opened the door, one of the officers presented his

badge and asked her if she would answer a few questions. *Id.* at
¶ 13.  Harmon allowed the officers into her home.  *Id.*

Dunlap informed Harmon that he had been following and
watching her, and accused her of running a brothel out of the
home. *Id.* at ¶ 15.  Dunlap further questioned Harmon about her
relationship with Keila Williams, an acquaintance of Harmon's who
had previously lived with her. *Id.* at ¶ 16.  Following this line
of questioning, Dunlap asked Harmon if someone could watch her
children because the officers had a warrant for her arrest. *Id.*
at ¶ 17.  Harmon, a single mother who had moved to New York from
Florida, responded that she did not know anyone who could watch
the children or take them to school. *Id.* at ¶ 18.  Dunlap
informed Harmon that she would be gone for a few hours and
ordered her to change her clothes. *Id.* at ¶ 19. Harmon was
wearing a nightgown at the time. *Id.*

Dunlap then followed Harmon to her bedroom upstairs while
the other officer remained by the front door. *Id.*  Once he and
Harmon were both in the bedroom, Dunlap shut the door behind him.
*Id.* at ¶ 20.  Harmon asked Dunlap to turn around while she
changed clothes, but he refused. *Id.*  Dunlap then watched as
Harmon got completely naked and put on different clothes. *Id.*
They both then proceeded downstairs and the officers placed
Harmon in handcuffs. *Id.* at ¶¶ 20-21.

After Harmon continued to raise concerns about her children,

2

Dunlap asked a neighbor to watch them.  *Id.* at ¶¶ 22-23.
Harmon's neighbor refused.  *Id.* at ¶ 23.  Dunlap then asked the
neighbor to watch as he searched Harmon's person.  *Id.* at ¶ 24.
The search was conducted within view of Harmon's children.  *Id.*
at ¶ 34.

Harmon claims that the search was unnecessary, as Dunlap had
already watched her change into her clothes.  She further alleges
that Dunlap "fondled and molested Plaintiff in her genital
areas."  *Id.* at ¶ 25.

> Specifically, he repeatedly rubbed his hand over
> Plaintiff's vagina, both outside her clothing as well
> as inside her clothing.  At one point, he briefly
> placed his fingers inside Plaintiff's vagina.
> Furthermore, he cupped Plaintiff's breasts several
> times, both from outside and underneath Plaintiff's
> outerwear, as well as doing the same thing with
> Plaintiff's buttocks.  These were areas he had just
> viewed . . . upstairs, and therefore, he knew or should
> have know there was nothing secreted in said areas.
> Instead, his actions were motivated by carnal desire or
> other nefarious purpose, as opposed to officer safety
> or meeting the ends of justice.  This prolonged search
> took several minutes in nature.

*Id.* at ¶ 26.

Following this search, the officers transported Harmon to
Erie County Holding Center.  *Id.* at ¶ 28.  During the ride there,
Dunlap informed Harmon that she was under arrest for Grand
Larceny.  *Id.*  According to the FAC, the charge was based upon an
allegation that Harmon had forged a check and subsequently
deposited the funds into her bank account.  *Id.* at ¶ 45.  That
charge was later dismissed.  *Id.* at ¶ 28.

Harmon now claims that Dunlap violated her rights under the New York and United States Constitutions, and that his actions caused her severe emotional distress. *Id.* at ¶ 29. In her initial Complaint, Harmon asserted two causes of action. The first alleged that Dunlap violated her rights when he forced her to change her clothes in front of him. The second arose out of the subsequent search of her person. Harmon's initial pleading did not provide as much detail about Dunlap's conduct during that search as is set forth in her FAC.

Dunlap moved to dismiss the Complaint. The Court granted the motion, dismissing Harmon's initial pleading without prejudice and with leave to amend. In doing so, the Court noted that additional facts might support a plausible claim with respect to the manner in which the second search was conducted. Harmon's FAC now brings a single cause of action alleging that the second search violated her rights. Dunlap again moves to dismiss.

## Standard of Review

When reviewing a Rule 12(b)(6) motion to dismiss, courts must determine whether the complaint pleads "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be facially plausible, a complaint must contain "well-pleaded facts"

4

that "allow[] the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.* at 678-79.
A complaint "does not need detailed factual allegations" but
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."
*Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In determining the plausibility of a claim, courts assume
that all factual allegations in the complaint are true.  *Iqbal*,
556 U.S. at 678.  Courts also view the facts in the light most
favorable to the plaintiff, drawing all inferences in the
plaintiff's favor.  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353,
359 (2d Cir. 2013).

## Discussion

Harmon claims that the search of her person was unlawfully
intrusive.  Dunlap does not argue that her claim is implausible.
Indeed, a cavity search of the type described by Harmon, absent a
reasonable suspicion that she was hiding evidence in her body,
would most likely be unlawful.  *See, e.g., Sloley v. VanBramer*,
945 F.3d 30, 39 (2d Cir. 2019) (holding that "body cavity
searches incident to all arrests . . . must be based on
reasonable suspicion to believe that the arrestee is secreting
evidence inside the body cavity to be searched").  Dunlap instead
argues that the allegations in the FAC are inconsistent with
those asserted in the initial Complaint, and should therefore be

5

disregarded and the case dismissed.  The Court disagrees.

Harmon's initial Complaint alleged that "Dunlap gave extra attention to her breasts, buttocks, and the area in between her legs," and that she "felt as though she was being groped rather than having a search performed on her."  ECF No. 1 at ¶ 25.  She also referenced feeling "physically molested."  *Id.* at ¶ 46.  In his motion to dismiss the Complaint, Dunlap argued that her claim was insufficient absent "additional evidence of improper conduct."  ECF No. 9 at 12.  Harmon has now asserted such additional facts, giving far more detail about the alleged "groping" referenced in her original pleading.

Dunlap compares this case to *Vaughn v. Strickland*, No. 12 CIV. 2696 JPO, 2013 WL 3481413 (S.D.N.Y. July 11, 2013), in which the *pro se* plaintiff was one of several inmates alleging an unlawful visual strip search.  The *Vaughn* court noted that "[w]hile [the plaintiff's] original Complaint exactly tracked the allegations of the other plaintiffs, . . . [his] allegations in the FAC vary dramatically from those in his original Complaint." *Vaughn*, 2013 WL 3481413, at *2.  The court therefore dismissed the allegations as "a sham."  *Id.* at *6.  Dunlap also cites *Wallace v. New York City Dep't of Corr.*, No. 95 CV 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996), in which the court found the "amended complaint . . . directly contradicts the facts set forth in [the] original complaint."

Here, Harmon's account is different from her original factual allegations primarily in terms of the level of detail provided.  The FAC's core allegation, that the manner of the search was inappropriate, was present initially.  Moreover, unlike the inmate's amended pleading in *Vaughn*, there are no other accounts asserting a contrary set of facts.

Dunlap argues that Harmon is not only alleging different facts, but also a different legal theory.  It is true that the focus of her claim has shifted somewhat from lack of necessity to unlawful intrusiveness.  Nonetheless, intrusiveness was part of the initial claim, and lack of necessity remains an element.  In her initial Complaint, Harmon alleged that the second search was "seemingly conducted only so that Defendant Dunlap had an apparent legitimate reason to physically molest Plaintiff."  ECF No. 1, at ¶ 46.  She also continues to cite the lack of any apparent justification for the search, claiming that there was no danger to officer safety and no concern about evidence preservation.  Furthermore, the Court's prior order specifically allowed Harmon to supplement her contention that the manner of the search was unlawful.  She has now made such an amendment, and there is no dispute that her current allegations state a plausible constitutional claim.

## Conclusion

For the reasons set forth above, the pending motion to

dismiss (ECF No. 14) is denied.

DATED at Burlington, in the District of Vermont, this 14th day of July, 2020.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge